UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| F&H Architectural Design and Consulting, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Bryan T. Cafferelli, et al.,<br><br>Defendants. | No. 3:23-cv-624(VLB)<br><br>June 27, 2023 |

### MEMORANDUM OF DECISION

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by F&H Architectural Design and Consulting, LLC ("F&H") and F&H's sole member, Steven Kalur (collectively, "Plaintiffs") against the Commissioner of the Connecticut Department of Consumer Protection ("DCP"), Bryant Cafferelli, and three members of the Connecticut Architectural Licensing Board ("ALB"), Angela Cahill, Julia Jack, and Philip Cerrone.  (Compl. at ¶¶ 3–5.)  This suit is brought against the Defendants in their official capacities only.  (Compl. at caption.)  The primary focus of this case is on an administrative complaint brought against the Plaintiffs by the DCP, who alleges the Plaintiffs are in violation of Connecticut law for knowingly, willfully, or intentionally using the title architect and/or similar terms to indicate Kalur practices or offers to practice architecture even though he is not a licensed architect in the state of Connecticut.  (Compl. at Ex. B.)  The administrative complaint provides notice to the Plaintiffs of a hearing before the ALB scheduled for July 19, 2023, where the Plaintiffs have the right to appear and answer to the charges.  (*Id.*)

1

After receipt of the administrative complaint, the Plaintiffs filed this suit. (Compl.)  Then, on June 7, 2023, the Plaintiffs filed an "Emergency Motion for Temporary Restraining Order and Preliminary Injunction" and a supporting memorandum of law.  (Mot., ECF No. 13; Mem. of Law, ECF No. 14.)  Local District Court Rule 7(a)(6) authorizes a party to "request expedited consideration by the Court of a motion by designating the motion as one seeking 'emergency' relief and demonstrating good cause in the motion."  The Court affords expedited review of the Plaintiffs' motion for the purpose of determining if immediate relief is necessary and appropriate.  The Plaintiffs request an order enjoining the Defendants from proceeding with the July 19, 2023 ALB hearing.

For the following reasons, the Court denies the Plaintiff's motion.

I. BACKGROUND

A. Architect Statutory Scheme

Playing an important role in this action are the Connecticut General Statutes.  The Connecticut General Statutes are organized into titles, chapters, and sections.  Titles are the largest category, covering broad subject areas.  Titles are made up of chapters, which focus on smaller subject areas.  Within the chapters are sections, which typically are the specific laws.

This case involves a set of laws in Title 20 of the Connecticut General Statutes, which is titled "Professional and Occupational Licensing, Certification, Title Protection and Registration. Examining Boards."  Title 20 contains law governing a wide range of professional occupations that provide services to the public.  Chapter 390 of Title 20 specifically governs "architects" and the "practice

of architecture." Section 20-288(2) of this chapter defines "architect" as "a person who engages in the practice of architecture."

> 'The practice of architecture' or 'practice architecture' means rendering or offering to render service by consultation, investigation, evaluations, preliminary studies, plans, specifications and coordination of structural factors concerning the aesthetic or structural design and contract administration of building construction or any other service in connection with the designing or contract administration of building construction located within the boundaries of this state, regardless of whether any person performing such duties is performing one or all of such duties or whether such person is performing them in person or as the directing head of an office or organization performing them.

Conn. Gen. Stat. 20-288(3).

> Section 20-290 provides:
>
> In order to safeguard life, health, and property, no person shall practice architecture in this states, except as provided in this chapter, or use the title 'architect', or display or use any words, letters, figures, title, sign, seal, advertisement or other device to indicate that such person practices or offers to practice or offers to practice architecture, unless such person has obtained a license as provided in this chapter.

Activities exempt from "the provisions of this chapter," this chapter meaning chapter 390 of Title 20, include:

> (2) the construction or alteration of a residential building to provide dwelling space for not more than two families, or of a private garage or other accessory building intended for use with such residential building, or of any farm building or structure for agricultural use;
>
> (3) the preparation of details and shop drawings by persons other than architects, for use in execution of the work of such persons, when buildings are designed in accordance with the requirements of this chapter
>
> (8) the making of plans and specifications for or supervising the erection of any building, any building addition or any alteration to an existing building, where the building, including any addition,

3

contains less than five thousand square feet total area, [subject to exceptions.]

Conn. Gen. Stat. § 20-298.

The laws governing architects and the practice of architecture also provide for the establishment of the Architectural Licensing Board ("ALB"), which is a branch of the Department of Consumer Protections. Conn. Gen. Stat. § 20-289. The ALB has several responsibilities under these provisions, including consulting with the DCP on licensing and continuing education of architects, maintaining records of licensed architects, and any matters the DCP deems necessary to carry out the purposes of the architecture statutes. Conn. Gen. Stat. § 20-289. The ALB has the power to request the DCP inquire into potential violations of the architecture statutes, and to propose a final decision to the DCP finding a person violated the architecture statutes that can include an order for discontinuance of such violation and/or a civil penalty up to $1,000. Conn. Gen. Stat. §§ 20-294, 20-296.

The architecture statutes also include a provision for penalties, which authorizes a fine of not more than $500 and/or imprisonment of not more than one year against any person "who knowingly, willfully, or intentionally violates any provision of this chapter." Conn. Gen. Stat. § 20-297. The secretary of the ALB is mandated by law to aid enforcement of the architecture statutes and to give information concerning violations to the "proper prosecuting authorities for action." *Id.*

### B.  Complaint Allegations

The Plaintiff-Kalur is not a licensed architect.  (Compl. at ¶ 3.)  He alleges to engage only in architectural activities exempt from the licensing requirement under sections 20-298(2), (3), and (8).  (*Id.*)   Specifically, the Plaintiffs state that Kalur engages in "the creation of plans, specifications and building construction supervision only, as permitted" by the statutory exemptions.  (*Id.*)

The Plaintiffs allege that the Defendants have colluded and are colluding with the Connecticut Chapter of the American Institute of Architects ("CAIA")[1] to prevent non-architect designers of buildings and structures from saying or using in advertisements the words: "architectural," "architectural designer," "architectural services," "architecture," and/or "architect."  (Compl. at ¶ 6.)

To support the allegation that the ALB is trying to prevent non-architect designers from using certain words, the Plaintiff points to two-publications from the ALB.  The first was in September 2009, where the ALB said in a public service announcement: "The use of the terms 'architectural' and 'architectural design' normally cannot be used especially in connection with building design."  (*Id.* at ¶ 7.)   The second was in February 2018, where the ALB said on a document posted to their website: "A person representing that he or she is an architect or provides architectural services, without being licensed to do so, is misleading to the public an creates a danger to [public] health, safety, and welfare."  (*Id.* at ¶ 8.)

To support the allegation that the ALB is colluding and conspiring with the CAIA, the Plaintiffs state that the ALB Defendants are members of the CAIA.  (*Id.*

---

[1] The Court presumes from context that the CAIA is a private trade association of licensed architects.

5

at ¶ 5.)  Further, the Plaintiffs state that in 2017, the CAIA complained of the Plaintiff's advertisements, which resulted in a DCP investigation the Plaintiff and concluding "[n]o action [was] warranted."  (*Id.* at ¶ 10.)  The Plaintiffs also allege that in August 2018, the CAIA complained again because a trade publication referred to Kalur as a "architect."  (*Id.* at ¶ 11.)  This allegation was also investigated by the DCP investigator.  (*Id.*)  The Plaintiffs responded in September 2018 and did not hear back from the investigator until February 2023.  (*Id.* at ¶¶ 11–12.)  Counsel for the Commissioner of the DCP wrote to the Plaintiffs informing the Plaintiffs that they can agree to stop using the proscribed wording and pay a fine, or be subject to an administrative complaint before the ALB.  (*Id.* at ¶ 12.)  The Plaintiffs refused and an administrative complaint was filed.  (*Id.*)

Attached to the Complaint is the administrative complaint issued in the ALB action by the DCP investigator. (Compl. at Ex. B.)  The DCP investigator alleges that the Plaintiffs have violated Connecticut General Statutes section 20-290 and 20-297.  (*Id.*)  The administrative complaint provides the Plaintiffs with notice of a hearing to take place on July 19th, 2023, where the Plaintiffs have the right to appear and answer the charges raised.  (*Id.*)  The Plaintiffs allege that the July 19th hearing will take place before the ALB.

In the underlying complaint, the Plaintiff alleges he only provides "architectural design work," and does not refer to himself as an "architect."  (*Id.* at ¶ 14.)  However, the Plaintiff claims that sections 20-288(2), (3), and (8) authorize him to use the word "architect" should he so choose because he is exempt from the prohibition from using "architect" in section 20-290.  (*Id.*)

6

The Plaintiffs raise several claims of liability under the First and Fourteenth Amendment. Under the First Amendment, the Plaintiffs claim use of the words "architectural" and "architecture" constitute protected commercial speech to which the Defendants are impeding based on an incorrect interpretation of section 20-290. (*Id.* at ¶¶ 15–16.) The Plaintiffs argue that the process proscribed by statute for adjudicating complaints under sections 20-296, 21a-7(1), 21a-7(b), 21a-1(d) violate procedural due process because it confers too much authority in the Commissioner of the DCP. (*Id.* at 7–8.) Finally, the Plaintiffs argue that the ALB members are not fair arbiters because they have prejudged the issues in their 2009 and 2013 publications, and they are members of the CAIA. (*Id.* at 9–15.)

II.     DISCUSSION

Though the title of the Plaintiffs' motion includes the words "temporary restraining order," the content of the motion focuses exclusively on preliminary injunction and provides no legal authority or argument entitling them to a retraining order. Thus, the Court will review the Plaintiffs' motion as a motion for preliminary injunction only.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A preliminary injunction is an equitable remedy and an act of discretion by the court." *Am. C.L. Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015). "A party seeking a preliminary injunction must generally show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public

interest." *Id.* (citing to *Winter,* 555 U.S. at 20). The moving party has the burden of persuasion and must meet this burden by making a "clear showing" of an entitlement to such relief. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Court will first address the irreparable harm requirement. The showing of irreparable harm is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction," *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002). "To establish irreparable harm, a party seeking preliminary injunctive relief must show that 'there is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" *Id.* (citation omitted). "And, irreparable harm must be shown to be actual and imminent, not remote or speculative." *Id.*

It is well established that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976). In a case with First Amendment claims, the speech must be either threatened or in fact being impaired. *American Postal Workers Union, AFL-CIO v. U.S. Postal Service*, 766 F.2d 715, 722 (2d Cir. 1985). Mere possibility of chilled speech is not sufficient to establish real and imminent harm. *Latino Officers Ass'n v. Safir*, 170 F.3d 167, 171 (2d Cir. 1999).

In *American Postal Workers Union*, a postal worker, who was also a union-president, was subject to ongoing disciplinary proceedings after being accused of sending a letter with allegedly false claims to one of the local post office's largest clients in an effort to attack downsizing at that office. 766 F.2d at 718–19.

8

During that time, the worker was placed on unpaid leave during the discharge proceedings. *Id.* The union and the worker brought suit in federal court and sought preliminary injunction enjoining the postal service from discharging the worker pending the outcome of the discharge proceedings. *Id.* at 719. The district court granted preliminary injunction and found in relevant part the plaintiffs sufficiently alleged irreparable injury due to the potentially chilling effect on the plaintiffs' rights under the First Amendment. *Id.*

The Second Circuit reversed the district court in *American Postal Workers Union*, after concluding that the district court abused its discretion in awarding the preliminary injunction. *Id.* at 720–21. On the irreparable harm element, the Second Circuit first considered whether the plaintiffs' First Amendment rights were implicated by the underlying conduct and, then whether a potential discharge pending the discharge proceedings sufficiently chills the exercise of speech. *Id.* at 721. The Second Circuit found that the speech likely was subject to the First Amendment, but could not find that the potential discharge would have a chilling effect on the speech. *Id.* at 721–22. The Second Circuit reasoned that the plaintiffs only made conclusory allegations of chilled speech and how preliminary injunction would thaw any such speech where the threat of permanent discharge remained. *Id.* at 722. In distinguishing its case from that of *Elrod v. Burns*, 427 U.S. 347 (1976), where preliminary injunction was properly granted for employees of a sheriff's office who were threatened with immediate discharge if they refused to change their political association, the Second Circuit in *American Postal Workers Union* could not find how truthful speech protected

9

under the First Amendment could be threatened in an administrative action against false speech.  *Id.*

The Court will assume, but is by no means finding, that the Plaintiffs' First Amendment rights are implicated.  Moving next to whether the Plaintiffs have sufficiently alleged the administrative proceedings has a chilling effect their First Amendment right of speech, the Court is not convinced.  Like the plaintiffs in *American Postal Workers Union*, the Plaintiffs here have presented only conclusory allegations of chilled protected speech.  The Plaintiffs have not alleged that their speech has actually been chilled, much less how the administrative proceedings have caused them to change their speech in any way.

Also, like *American Postal Workers Union*, the administrative proceeding in this case is based on *unprotected speech*, not *protected speech*.  Specifically, the ALB is assessing whether the Plaintiffs' alleged speech is deceptive and thus violates Connecticut law.  Deceptive commercial speech is not protected by the First Amendment.  *See Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 623–24 (1995).  The Plaintiffs have not presented a persuasive argument that an administrative proceeding into *unprotected speech* could chill *protected speech*.

Further, the Plaintiffs have not sufficiently alleged a real and imminent threat to their speech.  *Latino Officers Ass'n*, 170  F.3d at 171.  The Court is not convinced that the July 19th hearing poses a real and imminent threat.  At most, the hearing could result in the ALB issuing a proposed decision.  Conn. Gen. Stat. § 20-296.  The proposed decision does not become final until the DCP approves it and either: no appeal is taken; or the Connecticut Superior Court

affirms the DCP decision.  Conn. Gen. Stat. §§ 20-296, 21a-7, 4-183. The administrative process has hardly begun.  At the first hearing, the ALB could find no violation.  Based on the Plaintiffs own reports, this is the likely outcome, considering two similar complaints on the Plaintiffs' use of "architecture" and "architectural design" have failed to result in a finding of violation.  Even if the ALB finds a violation, then the DCP also needs to find a violation.  Then, even if the DCP finds a violation, then the Superior Court will have to find a violation.  At each level, the respective arbiter could find that the Plaintiffs have not violated Connecticut law and end the inquiry.  This process will likely take quite a bit of time.  The Court cannot find based on these allegations the Plaintiffs have presented a clear showing of a *real* and *imminent* threat, and thus the Plaintiffs failed to meet their burden for the extraordinary relief sought.  Therefore, their motion is denied.

### III.     CONCLUSION

For the aforementioned reasons, the Court denies the Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction.

IT IS SO ORDERED.

                                                /s/
                                    Hon. Vanessa L. Bryant
                                    United States District Judge

Dated this day in Hartford, Connecticut: June 27, 2023